William J. Cremer, Esq.
CREMER, SPINA, SHUGHNESSY, JANSEN & SIEGERT, LLC
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
Telephone: (312) 726-3800
Facsimile: (312) 726-3818

Attorneys for Plaintiff,
JACO VAN MAANEN

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACO VAN MAANEN, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| YOUTH WITH A MISSION-BISHOP; YOUTH WITH A MISSION INTERNATIONAL, INC. d/b/a YWAM-OFFICE OF THE FOUNDERS; UNIVERSITY OF THE NATIONS, INC. d/b/a YWAM-UNIVERSITY OF THE NATIONS, and DOES 1-10, | **DEMAND FOR JURY TRIAL** |
| Defendants. | Case Assigned for All Purposes to: |

Plaintiff, JACO VAN MAANEN, for his complaint against the Defendants, YOUTH WITH A MISSION-BISHOP, YOUTH WITH A MISSION INTERNATIONAL, INC. d/b/a YWAM-OFFICE OF THE FOUNDERS, UNIVERSITY OF THE NATIONS, INC. d/b/a YWAM-UNIVERSITY OF THE NATIONS, and DOES 1-10, states as follows:

## JURISDICTION

1.    This Court has jurisdiction over this civil action under 28 U.S.C. § 1332.

2.    Because a substantial part of the events and/or omissions giving rise to this claim occurred in this judicial district, venue is proper in the Eastern District Court of California pursuant to 28 U.S.C. § 1391.

3.     Plaintiff claims diversity of jurisdiction with regard to all defendants.

4.     The amount in controversy exceeds $75,000, exclusive of interests and costs.

## **PARTIES**

5.     Plaintiff, Jaco Van Maanen ("JACO"), is a lawful resident of Woerden, Netherlands.

6.     Defendant, Youth With A Mission – Bishop ("YWAM-BISHOP CAMPUS"), is a corporation with a registered address of P.O. Box 1818, Bishop, California 93514.

7.     YWAM-BISHOP CAMPUS is incorporated under the laws of California and has its principal place of business in California.

8.     Defendant, Youth With A Mission International, Inc. d/b/a YWAM-Office of the Founders ("YWAM-FOUNDERS") is a corporation with a registered address of 75-5851 Kuakini Highway, Kailua-Kona, Hawaii 96740.

9.     YWAM-OFFICE is incorporated under the laws of Hawaii and has its principal place of business in Hawaii.

10.     Defendant, University of the Nations, Inc. d/b/a YWAM-University of the Nations ("YWAM-UNIVERSITY") is a corporation with a registered address of 75-5851 Kuakini Highway, Kailua-Kona, Hawaii 96740.

11.     YWAM-UNIVERSITY is incorporated under the laws of Hawaii and has its principal place of business in Hawaii.

12.     All Defendants are doing and/or transacting business in California, individually and through their agents and alter-egos.

13.     DOES 1-10 are sued herein under fictitious names.  DOES 1-10 are being alleged due to the efforts of the YWAM leadership in creating multiple related entities for the purpose of hiding substantial assets from JACO.  Once their true names and capacities are ascertained during discovery, the plaintiff will amend this Complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that the plaintiffs' damages as herein alleged were proximately caused by those defendants.  Each reference

COMPLAINT FOR DAMAGES

1   in this Complaint for Damages to "Defendant," "Defendants," or a specifically named defendant

2   also refers to all defendants sued under fictitious names.

3       14.     At all times mentioned in this Complaint, each of the defendants was the agent,

4   principal, alter-ego, employee, employer, associate, parent company, and/or subsidiary of each of

5   the remaining defendants.   In doing the things hereinafter alleged, each such defendant was

6   vicariously liable for the misconduct of the other defendants, and each was acting within the course

7   and scope of such agency or employment.

8                        **FACTS COMMON TO ALL COUNTS**

9                        **YOUTH WITH A MISSION**

10      15.     Defendant YWAM-FOUNDERS is the parent organization of a Christian

11  missionary organization generally referred to as Youth With A Mission.  YWAM-FOUNDERS

12  operates in more than 1000 locations in over 150 countries, with a staff of nearly 16,000.

13      16.     Defendant YWAM-UNIVERSITY operates under the control of and in conjunction

14  with YWAM-FOUNDERS, offering college credited courses designed to train students in

15  furtherance of the goals set forth and espoused by YWAM-FOUNDERS.  Loren Cunningham, the

16  president of YWAM-FOUNDERS and YWAM-UNIVERSITY, operates both from his office in

17  Hawaii.

18      17.     YWAM-UNIVERSITY's courses are conducted throughout the world at various

19  satellite campuses. YWAM-UNIVERSITY terms these campuses, "branch locations."

20      18.     The courses offered by YWAM-UNIVERSITY and the locations where they can be

21  attended are found in a YWAM-UNIVERSITY Course Catalogue.

22      19.     Students can obtain the YWAM-UNIVERSITY Course Catalogue either in

23  electronic form through www.ywam.org, or by calling YWAM-FOUNDERS and requesting that a

24  hard copy be mailed.

25      20.     Two courses YWAM-UNIVERSITY offers are the Discipleship Training School

26  ("DTS") course and the School of Outdoor Adventure and Recreation ("SOAR") course.  The DTS

27  course is a prerequisite to the SOAR course.  Both courses teach Christian missionary skills.

28

3

COMPLAINT FOR DAMAGES

21.     In addition to teaching Christian missionary skills, the SOAR course also claims to teach its students how to safely participate in a number of outdoor activities such as rock climbing and zip lining.  A majority of the SOAR course is taught in a "wild" outdoor environment.

22.     The only YWAM-UNIVERSITY campus to offer the SOAR course is the YWAM-BISHOP CAMPUS in Bishop, California.

23.     Through its websites Defendants represent to potential students that their directors, faculty and/or employees have the necessary education, training, and experience required to safely educate and supervise SOAR students in the outdoor activities taught during the SOAR course.

24.     These representations are designed to induce students to enroll in the SOAR course and the students, including JACO, could reasonably rely upon these representations that they would be properly supervised, trained, and instructed in the various outdoor activities at all times when participating in the SOAR course.

**JACO'S INVOLVEMENT WITH YWAM**

25.     In or about January 2008 JACO was attending Defendants' DTS course in Heerde, Netherlands.  JACO completed this course on or about March 7, 2008.

26.     JACO was enjoying the DTS course and wanted to continue his education at YWAM-UNIVERSITY.

27.     In search for a YWAM-UNIVERSITY course taught in an outdoor setting, in or about January 2008 JACO began navigating through Defendants' websites searching for any YWAM-UNIVERSITY courses conducted in nature.

28.     Links to YWAM-UNIVERSITY, YWAM-FOUNDERS, and YWAM-BISHOP CAMPUS are all prominently featured on www.ywam.org, and represent, infer, and holdout to the public that Defendants are one entity.   Based on the website's structure and content, JACO reasonably believed the Defendants were one entity.

29.     Through Defendants' websites, JACO discovered YWAM-UNIVERSITY's SOAR course.  Because of its outdoor curriculum, JACO became immediately interested in the SOAR course.

4

COMPLAINT FOR DAMAGES

30.     He thereafter obtained a copy of the YWAM-UNIVERSITY Course Catalogue from www.ywam.org. The catalogue stated that the SOAR course was being offered at the YWAM-BISHOP CAMPUS branch location, and that it was an accredited campus of YWAM-UNIVERSITY.

31.     Through the Course Catalogue, JACO also learned that upon his successful completion of the SOAR course, YWAM-UNIVERSITY would provide him with twelve (12) college credits.

32.     In reliance on his past experience with Defendants and his belief that YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS were one entity, JACO enrolled in the YWAM-UNIVERSITY SOAR course at the YWAM-BISHOP CAMPUS branch location on or about September 12, 2008.

33.     When enrolling in the course, JACO relied on Defendants' representations that he would be provided with a safe learning environment that would be well supervised and that all activities would be conducted safely.

34.     On or about September 12, 2008 JACO paid the initial deposit of $520 towards enrollment in and tuition for the SOAR course.  This payment was followed by a tuition deposit made by JACO on or about October 31, 2008 in the amount of $3,000.  Finally, JACO's enrollment in the SOAR course was confirmed on or about February 19, 2009, when JACO made a final payment of $4,000.

35.     On information and belief, YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS all shared in these enrollment and tuition fees.

36.     JACO's SOAR course was scheduled to begin in or about March 2009.

**JACO'S SOAR COURSE**

37.     In or about March 2009 JACO traveled from his home in the Netherlands to the site of the YWAM-BISHOP CAMPUS in Bishop, California.

38.     Once there, JACO and the other students conducted and completed the classroom portion of the SOAR curriculum that was located at the Bishop office. The remaining portions of

COMPLAINT FOR DAMAGES

1    the SOAR course curriculum focused on learning the scheduled outdoor activities including how to

2    properly operate a zip line.

3        39.    In order to complete these portions of the course, JACO and the other students hiked

4    into the forested mountains towards Mammoth Lake, California where they were to complete the

5    remainder of the SOAR course at Defendants' campsite.

6        40.    In or about June 2009 Defendants' directors, faculty, and/or employees erected a zip

7    line that extended from one tree on top of a hill to a tree located at the bottom of the hill.

8        41.    All components of the zip line were at all times owned and controlled by

9    Defendants.

10        42.    The zip line was located near the campsite and was, on information and belief, 200

11    to 300 feet long.

12        43.    In violation of applicable industry safety standards, the zip line had no braking

13    mechanism and was not erected in a way that would naturally slow the zip-lining participants down

14    before they reached the end.  Further, there were no pads, tires, or any other cushioned material

15    placed at the end of the zip line in front of the base tree.

16        44.    On or about June 17, 2009 Defendants' directors, faculty, and/or employees directed

17    JACO and other SOAR students to ride the zip line.

18        45.    At this point in time the students had not received any training or instruction on how

19    to properly operate zip lines and/or participate in riding zip lines.  Although this was part of the

20    SOAR course curriculum, no student had been trained as of June 17, 2009.

21        46.    JACO lacked the skills and/or knowledge necessary to operate a zip line without

22    proper instruction and supervision.

23        47.    At the direction of Defendants' directors, faculty and/or employees, several students

24    and JACO traveled a short distance together from the campsite to the location of the zip line.

25        48.    Upon arriving at the zip line, JACO was strapped into a harness system and attached

26    to the zip line.  JACO was the first person in the group to ride the zip line.

27

28

6

COMPLAINT FOR DAMAGES

49.     Prior to instructing JACO to propel down the line, none of the directors, faculty members, and/or employees of Defendants warned JACO that the zip line had no braking mechanism and would not naturally slow him down.

50.     Despite the complete lack of instruction on the part of Defendants, JACO was directed by the directors, faculty members, and/or employees of Defendants to propel down the line.

51.     Because the zip line had no braking mechanism, and because it was not calibrated to naturally slow JACO down, JACO's speed continued to increase uncontrollably while he descended down the zip line.

52.     While traveling at a high rate of speed JACO struck the base tree the zip line was attached to as well as a metal ladder placed in front of that tree.  The impact of both collisions caused him severe and permanently disabling injuries.  Specifically, JACO suffered injuries including, but not limited to, a burst fracture of his C6 vertebra resulting in complete paralysis from his nipple line down.

## **CAUSE OF ACTION I – NEGLIGENCE**

### **(AGAINST YWAM-BISHOP CAMPUS)**

53.     Plaintiff repeats and realleges paragraphs 1-52 as though fully set forth in this count.

54.     It was foreseeable to Defendants and their employees and agents that a zip line with no braking mechanism and which was not calibrated in a way to naturally slow JACO down would be dangerous and unsafe and would be likely to cause serious bodily harm.

55.     It was foreseeable to Defendants and their employees and agents that placing a ladder in front of the base tree of the zip line would be dangerous and unsafe and would be likely to cause serious bodily harm.

56.     It was foreseeable to Defendants and their employees and agents that failing to provide adequate instruction and training on the proper methods to operate the zip line would be dangerous and unsafe and would be likely to cause serious bodily harm.

7

COMPLAINT FOR DAMAGES

57.     It was foreseeable to Defendants and their employees and agents that failing to provide adequate supervision to individuals like JACO, who had no experience in zip lining, would be dangerous and unsafe and would be likely to cause serious bodily harm.

58.     It was foreseeable that failing to provide adequate supervision of the zip lining equipment involved, thereby ensuring that the zip line was in reasonably safe condition, would be likely to cause serious bodily harm.

59.     It was foreseeable that a course taught in the remote wilderness of California would require Defendants to have in place policies and procedures to ensure the safety of its students, including JACO.  It was foreseeable that failing to have in place such policies and procedures, or failing to adhere to such policies and procedures, would be dangerous and unsafe and likely to cause serious bodily harm.

60.     It was Defendants' duty to use due care in erecting the zip line so that it would not be unreasonably dangerous and thereby create dangers not typically associated with the activity of zip lining.

61.     Defendants breached that duty of due care by failing to include a braking mechanism and/or calibrate the zip line in a way that would naturally slow JACO down to a speed where he could safely approach the end of the line and/or by failing to install any type of pads, tires, or other cushioned material at the end of the line that could have reduced the force of JACO's impact when he hit the base tree.   Defendants further breached that duty of care by placing a ladder in front of the base tree of the zip line.

62.     It was defendant's duty to use due care to properly instruct and train JACO on how to operate a zip line before permitting him to ride the zip line.

63.     Defendants breached that duty of due care by failing to instruct and train JACO on how to operate a zip line and by permitting him to operate the zip line without any type of instruction and/or training.

64.     It was Defendants' duty to adequately supervise JACO in his operation of the zip line.

8

COMPLAINT FOR DAMAGES

65. Defendants breached their duty to supervise JACO when they failed to warn JACO that the zip line had no braking mechanism and that it was not calibrated in a way that would naturally slow JACO down.

66. It was Defendants' duty to adequately supervise and test the zip line to ensure that it was in a reasonably safe condition before allowing students to use the zip line.

67. Defendants breached their duty to supervise the zip line when they failed to make a reasonably careful inspection of its appliances and methods and ensure it was safe to operate and utilize before allowing JACO to use the zip line.

68. Because of the commercial nature of YWAM-UNIVERSITY's SOAR course, it was Defendants' duty to use due care in making representations regarding the SOAR course on its websites and in its other publications. Specifically, Defendants had a duty not to make false representations on those websites and in those publications.

69. Defendants breached that duty when in an attempt to induce students to register for the SOAR course, they falsely represented to potential students that Defendants' directors, faculty members, and/or employees were qualified to erect, conduct, train, instruct, and supervise outdoor adventure activities including zip lining. These misrepresentations induced JACO to enroll in the SOAR course to his detriment.

70. It was Defendants' duty to have in place, and to at all times adhere to, policies and procedures designed to ensure the safety of their students.

71. Defendants breached that duty when they failed to have in place and/or failed to adhere to any policies and procedures designed to ensure the safety of their students.

72. Notwithstanding the aforementioned duties, Defendants, and their agents, servants, employees, and alter egos were guilty of one or more of the following negligent acts or omissions:

> (a) Carelessly and negligently erecting the aforementioned zip line without providing braking mechanisms and/or calibrating it in a way to naturally slow down the individuals utilizing the zip line and/or failing to place cushioned materials at the bottom of the zip line;

9

(b) Carelessly and negligently failing to hire faculty for the SOAR course who were properly trained and experienced in erecting zip lines and in supervising students engaged in outdoor adventure activities like zip lining.

(c) Carelessly and negligently failing to provide training and instruction on how to properly operate a zip line as promised in the SOAR course description and in spite of the unique teacher-student relationship between Defendants and JACO;

(d) Carelessly and negligently failing to provide adequate supervision while JACO was operating the zip line despite the unique teacher-student relationship between Defendants and JACO;

(e) Carelessly and negligently failing to conduct pre-testing of the zip line to ensure it was properly erected before allowing students to use the zip line;

(f) Carelessly and negligently failing to provide adequate supervision of the zip line to ensure it was reasonably safe to operate and utilize;

(g) Carelessly and negligently making false representations that its directors and/or employees were qualified to conduct and supervise zip lining activities; and

(h) Carelessly and negligently failing to have in place policies and procedures designed to ensure the safety of the SOAR students, including JACO.

73.    As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial medical expenses and will continue to incur future medical and caretaking expenses; he has lost potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the benefits thereof.

WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

## CAUSE OF ACTION II –NEGLIGENCE

## (AGAINST YWAM-BISHOP CAMPUS, YWAM-UNIVERSITY, YWAM-FOUNDERS)

## BASED ON COMMON CARRIER LIABILITY

74.    Plaintiff repeats and realleges paragraphs 1-73 as though fully set forth in this count.

75.    It was Defendants' duty to use the utmost care and diligence in erecting the zip line so as to provide a safe carriage down the zip line for JACO and the other participants.

10

COMPLAINT FOR DAMAGES

76.     Defendants breached their duty of utmost due care by failing to include a braking mechanism and/or calibrate the zip line in a way that would naturally slow JACO down to a speed where he could safely approach the end of the line and/or by failing to install any type of pads, tires, or other cushioned material at the end of the line that could have reduced the force of JACO's impact when he hit the base tree.  Defendants further breached that duty by placing a ladder in front of the base tree of the zip line.

77.     It was Defendants' duty to provide a zip line safe and fit for the purposes which zip lines are put to use; namely to transport the public safely and without injury from one location to another.

78.     Defendants breached that duty when they failed to include a braking mechanism and/or calibrate the zip line in a way that would naturally slow JACO down to a speed where he could safely approach the end of the line.  Without a braking mechanism and/or proper calibration and/or pads, tires, or other cushioned material located at the base of the zip line, the zip line was not safe and fit for zip lining purposes.

79.     Notwithstanding the aforementioned duties, Defendants, and their agents, servants, employees, and alter egos are liable pursuant to California Civil Code § 2100 and California Civil Code § 2101 for committing one or more of the following acts or omissions:

(a) Carelessly and negligently failing to exercise the utmost care in erecting the zip line and failing to provide everything necessary for the purpose of zip lining, in that the zip line was erected without braking mechanisms and/or proper calibration as is required by California Civil Code § 2100; and

(b) Carelessly and negligently failing to provide a zip line safe and fit for the purposes of zip lining as is required by California Civil Code § 2101.

80.     As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, JACO suffered severe and permanent personal injuries; has incurred substantial medical expenses and will continue to incur future medical and caretaking expenses; has lost potential wages and will suffer future lost wages; and has lost the enjoyment of a normal life and the benefits thereof.

11

COMPLAINT FOR DAMAGES

1  WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against

2  the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

3  ## CAUSE OF ACTION III-NEGLIGENCE

4  ## (AGAINST YWAM-UNIVERSITY, YWAM-FOUNDERS)

5  81.  Plaintiff repeats and realleges paragraphs 1-80 as though they were fully set forth in

6  this count.

7  82.  Notwithstanding the aforementioned duties, Defendants, and their agents, servants,

8  employees, and alter egos were guilty of the following negligent acts or omissions:

10  (a) Carelessly and negligently making false representations that its directors and/or employees were properly trained and qualified to conduct and supervise zip-lining activities;

12  (b) Carelessly and negligently failing to have in place policies and procedures designed to ensure the safety of the SOAR students, including JACO; and

14  (c) Carelessly and negligently failing to hire faculty for the SOAR course who were properly trained and experienced in erecting zip lines and in supervising students engaged in outdoor adventure activities like zip lining.

16  83.  As a direct and proximate result of one or more of the foregoing acts or omissions

17  by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial

18  medical expenses and will continue to incur future medical and caretaking expenses; he has lost

19  potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the

20  benefits thereof.

21  WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against

22  the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

23  / / /

24  / / /

25  / / /

26  / / /

27

28

12

COMPLAINT FOR DAMAGES

## CAUSE OF ACTION IV – NEGLIGENCE

### (AGAINST YWAM-UNIVERSITY)

## BASED ON VICARIOUS LIABILITY ARISING FROM AN ACTUAL AGENCY

### RELATIONSHIP

84.     Plaintiff repeats and realleges paragraphs 1-83 as though fully set forth in this count.

85.     YWAM-UNIVERSITY offers courses through its YWAM-BISHOP CAMPUS, which YWAM-UNIVERSITY represents to be one of its "Branch Locations."

86.     Defendant YWAM-UNIVERSITY reserves the right to change the schedules and courses it offers, including the YWAM-BISHOP CAMPUS SOAR course.  As such, it has direct control over YWAM-BISHOP CAMPUS.

87.     On information and belief, YWAM-UNIVERSITY receives a share of the student tuition fees from its Branch Locations like YWAM-BISHOP CAMPUS.

88.     YWAM-BISHOP CAMPUS directors, faculty members, and/or employees are employees of YWAM-UNIVERSITY.

89.     YWAM-UNIVERSITY directed, instructed, and accredited YWAM-BISHOP to carry on its educational activities for the SOAR course.  As such, YWAM-BISHOP transacts business on behalf of, and manages the affairs of YWAM-UNIVERSITY.  In doing so YWAM-UNIVERSITY has given YWAM-BISHOP CAMPUS the authority to transact business on its behalf, and thereby alter the legal relations between YWAM-UNIVERSITY and others.

90.     As a result of one or more of the foregoing facts, YWAM-UNIVERSITY employed YWAM-BISHOP CAMPUS to represent it, providing YWAM-UNIVERSITY with the right to control YWAM-UNIVERSITY's conduct, and YWAM-BISHOP CAMPUS with the authority to act on YWAM-UNIVERSITY's behalf. This has created an actual agency relationship between YWAM-UNVERSITY and YWAM-BISHOP CAMPUS.

91.     This actual agency relationship makes YWAM-UNIVERSITY vicariously liable for the negligent acts and omissions of YWAM-BISHOP CAMPUS.

COMPLAINT FOR DAMAGES

92.     As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial medical expenses and will continue to incur future medical and caretaking expenses; he has lost potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the benefits thereof.

WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

## CAUSE OF ACTION V –NEGLIGENCE

### (AGAINST YWAM-UNIVERSITY)

### BASED ON VICARIOUS LIABILITY ARISING FROM AN OSTENSIBLE AGENCY RELATIONSHIP

93.     Plaintiff repeats and realleges paragraphs 1-92 as though fully set forth in this count.

94.     Because YWAM-UNIVERSITY represents that YWAM-BISHOP CAMPUS is a "Branch Location" of YWAM-UNIVERSITY, YWAM-UNIVERSITY thereby holds itself out to potential students that it is the principal in an agency relationship with YWAM-BISHOP CAMPUS, its agent.

95.     It is reasonable for potential students to rely on these representation and manifestations and to believe that YWAM-BISHOP CAMPUS has the apparent authority to act on behalf of YWAM-UNIVERSITY.

96.     To his detriment, JACO relied on these representations and manifestations and believed YWAM-UNIVERSITY to be the principal of YWAM-BISHOP CAMPUS when he enrolled in the SOAR course.

97.     These affirmative representations and manifestations of agency and JACO's subsequent reliance thereon has created an ostensible agency relationship between YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS.

98.     This agency relationship makes YWAM-UNIVERSITY vicariously liable for the negligent acts and omissions of YWAM-BISHOP CAMPUS.

COMPLAINT FOR DAMAGES

99.     As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial medical expenses and will continue to incur future medical and caretaking expenses; he has lost potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the benefits thereof.

WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

## CAUSE OF ACTION VI – NEGLIGENCE

### (AGAINST YWAM-FOUNDERS)

### BASED ON VICARIOUS LIABILITY ARISING FROM AN ACTUAL AGENCY RELATIONSHIP

100.    Plaintiff repeats and realleges paragraphs 1-99 as though fully set forth in this count.

101.    YWAM-FOUNDERS represents on its website, www.ywam.org, that it has more than 1000 locations in over 150 countries, with a staff of nearly 16,000.

102.    YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS are two (2) of these locations referred to on the web site.

103.    YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS employees are the employees of YWAM-FOUNDERS.

104.    On information and belief, YWAM-FOUNDERS instructs and directs YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS to teach courses reflecting the goals set forth and espoused by YWAM-FOUNDERS. YWAM-FOUNDERS thereby gives YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS the authority to transact business on its behalf and thereby alter the legal relations between YWAM-FOUNDERS and others.

105.    Loren Cunningham, the President of YWAM-FOUNDERS and YWAM-UNIVERSITY, requires, on information and belief, YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS to adhere to these goals and implement them in their respective courses. Thus, YWAM-FOUNDERS has direct control over YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS.

COMPLAINT FOR DAMAGES

106.    As a result of one or more of the foregoing facts, YWAM-FOUNDERS has employed YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS to represent it, providing YWAM-FOUNDERS with the right to control YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS' conduct, while simultaneously giving YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS the authority to act on YWAM-FOUNDERS' behalf.  This has created an actual agency relationship between YWAM-FOUNDERS, as the principal, and YWAM-UNVERSITY and YWAM-BISHOP CAMPUS as the agents.

107.    This actual agency relationship makes YWAM-FOUNDERS vicariously liable for the negligent acts and omissions of YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS.

108.    As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial medical expenses and will continue to incur future medical and caretaking expenses; he has lost potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the benefits thereof.

WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

## CAUSE OF ACTION VII – NEGLIGENCE

### (AGAINST YWAM-FOUNDERS)

### BASED ON VICARIOUS LIABILITY ARISING FROM AN OSTENSIBLE AGENCY RELATIONSHIP

109.    Plaintiff repeats and realleges paragraphs 1-108 as though fully set forth in this count.

110.    YWAM-FOUNDERS represents on its website, www.ywam.org, that it has more than 1000 locations in over 150 countries, with a staff of nearly 16,000.

111.    Because of this and other representations and manifestations of agency, YWAM-FOUNDERS holds itself out to potential students that it is the principal in an agency relationship

16

COMPLAINT FOR DAMAGES

1  with its locations and their staff, including YWAM-UNIVERSITY and YWAM-BISHOP

2  CAMPUS.

3      112.   It is reasonable for students to rely on these representations and believe that

4  YWAM-BISHOP CAMPUS and YWAM-UNIVERSITY have the apparent authority to act on

5  behalf of YWAM-FOUNDERS.

6      113.   JACO relied on these representations in forming the belief that YWAM-

7  UNIVERSITY and YWAM-BISHOP CAMPUS were the agents of YWAM-FOUNDERS.  This

8  reliance was to JACO's detriment.

9      114.   These facts have created an ostensible agency relationship between YWAM-

10 FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS.

11     115.   This agency relationship makes YWAM-FOUNDERS vicariously liable for the

12 negligent acts and omissions of YWAM-BISHOP CAMPUS and YWAM-UNIVERSITY.

13     116.   As a direct and proximate result of one or more of the foregoing acts or omissions

14 by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial

15 medical expenses and will continue to incur future medical and caretaking expenses; he has lost

16 potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the

17 benefits thereof.

18     WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against

19 the defendants, and each of them, as set forth in the Prayer at the end of this Complaint.

20          **CAUSE OF ACTION VIII – NEGLIGENCE**

21    **(AGAINST YWAM-OFFICE, YWAM-UNIVERSITY, YWAM-BISHOP CAMPUS)**

22              **BASED ON ALTER EGO**

23     117.   Plaintiff repeats and realleges paragraphs 1-116 as though fully set forth in this

24 count.

25     118.   YWAM-FOUNDERS and YWAM-UNIVERSITY use the same registered address

26 of 75-5851 Kuakini Highway, Kailua Kona, Hawaii 96740.

27

28

                                17

COMPLAINT FOR DAMAGES

119.    YWAM-FOUNDERS and YWAM-UNIVERSITY use the same offices.  Further, the phone number provided on www.ywam.org for YWAM-FOUNDERS, immediately directs callers to a receptionist who answers for YWAM-UNIVERSITY and YWAM-FOUNDERS.

120.    On information and belief YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS commingle funds and other assets.

121.    On information and belief YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS hold a common equitable ownership in each other's assets and property.

122.    Loren Cunningham, founder and President of YWAM-FOUNDERS, is also the President of YWAM-UNIVERSITY.

123.    Loren Cunningham and Leroy Goehner serve as corporate officers for both YWAM-FOUNDERS and YWAM-UNIVERSITY.

124.    YWAM-FOUNDERS sets forth and espouses goals which, on information and belief, it requires YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS to adhere to. As such, YWAM-FOUNDERS uses YWAM-UNIVERSITY and YWAM-BISHOP CAMPUS as the conduit for its own affairs.

125.    Through the various representations made by Defendants' on their websites and in their other publications, JACO reasonably believed that the Defendants were one entity.  Since JACO had taken Defendants' DTS course he trusted that each of Defendants' courses would be taught under similarly safe circumstances.  Without this belief, JACO would not have enrolled in Defendants' SOAR course.

126.    JACO's reasonable belief that Defendants were one single entity and his trust therein proved to be to his detriment.

127.    YWAM-FOUNDERS and YWAM-UNIVERSITY have engaged in a policy to undercapitalize their affiliated chapters while operating hazardous outdoor adventure activities that could result in catastrophic injury to students participating in those injuries.

COMPLAINT FOR DAMAGES

128.   This policy of undercapitalizing its affiliated chapters precludes injured students like JACO from receiving adequate compensation for their injuries from those chapters, while permitting YWAM-FOUNDERS and YWAM-UNIVERSITY to enjoy the monetary benefits received from those chapters.

129.   Only by piercing the corporate veil can this injustice against JACO be prevented.

130.   Because of the existence of one or more of the aforementioned conditions, YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS share a significant unity of interest and ownership, and the separate personalities of the three (3) corporations no longer exists.

131.   As such, YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP OFFICE are the alter egos of each other.

132.   Because YWAM-FOUNDERS, YWAM-UNIVERSITY, and YWAM-BISHOP CAMPUS are the alter egos of each other, each one is equally liable for the negligent acts and omissions of the other.

133.   As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, JACO suffered severe and permanent personal injuries, has incurred substantial medical expenses and will continue to incur future medical and caretaking expenses; he has lost potential wages and will suffer future lost wages; he has lost the enjoyment of a normal life and the benefits thereof.

WHEREFORE, based on the foregoing, Plaintiff Jaco Van Maanen prays for relief against the defendants, and each of them, as follows:

1.   For general and special damages in the amount of $25,000,000;

2.   For prejudgment interest as allowed by law;

3.   For costs of suit herein;

4.   For investigative expenses including, but not limited to, expert fees and costs;

5.   For attorneys' fees incurred in the prosecution of this action as may be provided by law; and

19

COMPLAINT FOR DAMAGES

1         6.   For such other relief as this court shall deem just and proper.

2    Dated:  March 17, 2010.

3                                    CREMER, SPINA, SHUGHNESSY, JANSEN &
4                                    SIEGERT, LLC

5

6                            By:   ___/ss/ William J. Cremer_____
7                                    William J. Cremer, Esq.
                                Attorneys for Plaintiff,
8                                    JACO VAN MAANEN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES