IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACO VAN MAANEN,<br><br>    Plaintiff,<br><br>    v.<br><br>YOUTH WITH A MISSION-BISHOP; YOUTH WITH A MISSION INTERNATIONAL, INC. d/b/a YWAM-OFFICE OF THE FOUNDERS UNIVERSITY OF THE NATIONS, INC. d/b/a YWAM-UNIVERSITY OF THE NATIONS, AND DOES 1-10,<br><br>    Defendant. | Case No. 1:10-cv-00493 AWI JLT<br><br>ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT UNIVERSITY OF THE NATIONS' DISCLOSED EXPERT OPINION<br><br>(Doc. 57) |

Before the court is Plaintiff's motion to strike the expert opinion of Yvonne Spijkerman, designated by Defendant University of Nations' (hereinafter "Defendant"). (Doc. 57.) Plaintiff contends that the opinion of Ms. Spijkerman should be stricken because, rather than rebutting the opinions of Plaintiff's expert Dr. Kawai, Ms. Spijkerman provides an analysis of the services and entitlements that Plaintiff has under the government health care program provided in the Netherlands.

After considered the parties' papers and the arguments of counsel, for the reasons set forth below, the Court **DENIES** the motion.

**I.     BACKGROUND**

In his complaint, Plaintiff seeks damages for injuries he suffered while using a zip line on June

1  17, 2009, near Mammoth Lakes, California.  As a result of this incident, Plaintiff suffered paralysis
2  below the level of his chest.

3  On September 9, 2011, Plaintiff made his disclosure of his retained expert Dr. Sharon K. Kawai.
4  (Doc. 57 at 2.)  Dr. Kawai is Board Certified in Physical Medicine and Rehabilitation and has extensive
5  experience treating patients with spinal cord injuries. (Doc. 57, Ex. 1 at 5).  Dr. Kawai provided her
6  opinions about the care that Plaintiff would need in the future and provided a life care plan based upon
7  the cost of these services in California.  (Doc. 57, Ex. 1)

8  On October 10, 2011, Defendant disclosed Yvonne Spijkerman as its rebuttal expert witness and
9  corresponding opinion.  (Doc. 57 at 2.)  Ms. Spijkerman is an Occupational Therapist who has
10 considerable training and experience working with patients with spinal cord injuries.  (Doc. 57, Ex 2.)
11 In her written report, Ms. Spijkerman provides analysis of the medical treatment and services to which
12 Plaintiff is entitled under the government provided health care program in the Netherlands, along with
13 the added benefits that Plaintiff can receive based upon his payment for an upgrade of his health care
14 coverage.  Id.

15 **II.    Plaintiff's Motion to Exclude Expert Opinion and Testimony**

16 Plaintiff moves to strike Ms. Spijkerman's opinions on the grounds that they exceed the scope
17 of proper rebuttal material.  Plaintiff contends that Spijkerman's report includes topics outside the
18 subject matter discussed in the report provided by Plaintiff's expert, Dr. Kawai, because rather than
19 attacking or addressing Dr. Kawai opinion, Spijkerman offers new opinions on the cost of providing for
20 Plaintiff's future medical needs based on Plaintiff's supplemental insurance and the public health care
21 programs provided in the Netherlands.  (Doc. 57 at 4.) Plaintiff asserts that Defendant improperly
22 characterized Spijkerman's opinions as rebuttal in order to allow the late disclosure of the opinions after
23 the deadline had passed. (Doc. 57 at 5.)   Finally, Plaintiff contends that according to California's
24 collateral source rule, Spijkerman's report and future testimony must be barred.  (Doc. 57.) Thus,
25 Plaintiff urges the Court to strike Spijkerman's opinion and bar her further testimony at trial.

26 Defendant contends that its disclosure of its rebuttal expert was proper because the expert
27 specifically opines as to the same subject matter identified by Dr. Kawai, i.e., the costs associated with
28 Plaintiff's future medical needs. (Doc. 87 at 9-11.) As to Plaintiff "collateral source" rule contentions,

Defendant argues that Plaintiff's motion is premature in that it requests the Court to determine pretrial evidentiary issue in the guise of a discovery motion. (Id. at 8.)

### III.  DISCUSSION

*A.  Ms. Spijkerman's opinions are properly regarded as rebuttal.*

Rule 26(a) (2)(A) provides that a party must disclose the identity of any expert witness it may use at trial. Unless otherwise stipulated or ordered by the court, the disclosure must be accompanied by a written report. Fed. R. Civ. P. 26(a)(2)(B). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Here, as noted above, affirmative and rebuttal experts were to be disclosed on July 5, 2011 and August 5, 2011, respectively. Accordingly, the Court's scheduling order controls, and the issue of whether Defendant's disclosure of its experts is untimely depends on whether the evidence from Defendant's expert is intended solely to rebut evidence offered by Plaintiff's expert, Dr. Kawai.

Dr. Kawai's report provides a life care plan outlining Plaintiff's future medical needs based on Plaintiff's life expectancy and provides an estimate of the cost of these needs based on current California medical costs. (Doc. 57, Ex 1.) Dr. Kawai specifically noted that, "I have used current medical costs in the California area as I have no information with regards to the costs for such services in the Netherlands." Id. at 5.

In response, Ms. Spijkerman provides information about the government-sponsored, mandatory health care program provided in the Netherlands for all citizens. (Doc. 57, Ex 2) Her report provides a line item by line item analysis of Dr. Kawai's life care plan. Id. In doing so, Ms. Spijkerman does not opine as to the need for any plan item recommended by Dr. Kawai nor does she comment on the cost of the plan items if provided in California. Id. Instead, Ms. Spijkerman reports on, in essence, the cost to Plaintiff for these line items if received in the Netherlands. Id.

Ms. Spijkerman reports that many of the plan items will be provided free of cost to Plaintiff due to the standard health care coverage provided to every citizen or due to the supplemental insurance Plaintiff buys. (Doc. 57, Ex 2) Others will be provided on a more limited basis or will be provided only because Plaintiff has purchased the supplemental insurance. Id. Many items may be provided only if the "local council" determines that they should be provided after an evaluation of Plaintiff's need. Id.

Though Ms. Spijkerman's report does not dispute the necessity for any of the services identified by Dr. Kawai, undoubtedly, she disputes the out-of-pocket costs Plaintiff will undergo for these services. Therefore, the Court finds that Ms. Spijkerman's expert report is specifically limited to rebutting and addressing the theories advanced by Dr. Kawai. (Doc. 57-2.) Indeed, without knowing the specific items of care needed by Plaintiff, an analysis of Plaintiff's cost for these services in the Netherlands, could not have occurred.

The Court disagrees that Ms. Spijkerman's report offers a new theory merely because it opines that the California-based costs used by Dr. Kawai are not the reasonable costs that Plaintiff will face in his home country. Because Ms. Spijkerman's expert opinion does not go beyond the boundaries of Dr. Kawai's report or offer new theories, Defendant's characterization of Ms. Spijkerman as a "rebuttal expert" was not disingenuous.

Plaintiff's reliance on International Business Machines Corp. v. Fasco Indus., Inc., 1995 U.S. Dist. LEXIS 22533 (N.D.Cal. Mar.15, 1995), is unavailing. In Fasco, IBM filed a breach of contract action alleging that Fasco, one of its suppliers, had provided a defective blower used to cool components of an IBM data storage machine. Id. at 2. Two of IBM's experts offered opinions about the defectiveness of the blower and one opined about IBM's resulting lost profits. Id. In its initial disclosure Fasco disclosed an economics expert but did not disclose an expert related to the defectiveness of the product. Id. at 3. Instead, Fasco indicated that it would disclose these experts in rebuttal. Id.

In its rebuttal disclosure, Fasco identified six experts. Fasco intended four of the experts to opine that the blower was not defective, one to opine as to the industry custom and practice as to testing of blowers and one to opine as to economic damages. Fasco, at 3. In striking four of the newly disclosed experts, the court found two of the experts were offering opinions on topics which IBM offered no expert testimony. Id. at 8-9. In allowing two of the "defects" experts to testify, the Court observed that they intended to offer opinions only as to IBM's theory that use of an improper metal in the manufacturing process caused the blower to be defective. Id. In doing so, the Court found that these experts would be allowed only to "pok[e] holes in the theories of IBM's experts." Id. at 3.

Plaintiff's citation to Vu v. McNeil-PPC, Inc., 2010 U.S. Dist. LEXIS 53639 (C.D. May 7, 2010) is similarly distinguishable. In Vu, plaintiffs moved to strike defendant's rebuttal expert who offered

alternate theories of the possible causes death of plaintiffs' decedent. Id. at 5-8. The defendant argued that this opinion was properly asserted in rebuttal because it was "related" to the same subject matter as the opinion offered by Plaintiff's expert–that the cause of death was the use of a specific medication. Id. at 7-8. The court rejected this argument and held, "If the phrase 'same subject matter' is read broadly to encompass any possible topic that relates to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.' More importantly, such broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results, such as the result Costco suggests in its opposition." Id. at 7-8. Again, unlike in Vu, Defendant's rebuttal expert does not offer any new theories or address topics unrelated Plaintiff's expert's opinion. Instead, it merely "pokes holes" in the amount that the life care plan items will cost Plaintiff.

### B. Though it appears that Ms. Spijkerman's opinion violates the collateral source rule, it is unclear whether it will be admissible at trial

Under California's collateral source rule, a plaintiff's damage award may not be reduced to account for compensation the plaintiff received from sources independent of the tortfeasor as to amounts the plaintiff "would otherwise collect from the tortfeasor." Howell v. Hamilton Meats & Provisions, Inc., 52 Cal.4th 541, 548 (2011). The collateral source rule "embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift." Helfend v. Southern California Rapid Transit Dist., 2 Cal.3d 1, 9-10 (1970).

> The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. ... If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.

Id.

The collateral source rule grew from a series of cases, most notably Hanif v. Housing Authority, 200 Cal.App.3d 635, 641 (Cal. Ct. App. 1988) and Nishihama v. City and County of San Francisco, 93 Cal.App.4th 298, 306 (Cal. Ct. App. 2001). In Hanif, the court limited the plaintiff's recovery to the amounts paid for past medical care, rather than allowing recovery of the amount billed. Hanif, at 641. Similarly, in Nishihama, the court reduced the jury award to the amount the that the health care provider

1 agreed to accept from the plaintiff's insurer as payment in full. Within the last few months, the
2 California Supreme Court decided Howell.

3   In Howell, the Court was presented with a circumstance in which the injured plaintiff was
4 covered by a policy of insurance. At the time of the plaintiff's injuries, the insurer and the medical
5 providers had in place an agreement as to the amount that the medical provider would accept as payment
6 in full for care provided, regardless of the amount billed. Howell, at 548.

7   At trial, the plaintiff prevailed on the defendant's motion in limine that sought to preclude the
8 plaintiff from introducing evidence of the full amount of the medical bills. Howell, at 549. The
9 defendant argued that the plaintiff's insurance company had reduced the medical bills before making
10 payment, based upon the existing agreements between the insurer and the medical providers. Id. These
11 same agreements precluded Plaintiff from being billed for the excess. Id. Thus, the defendant argued
12 that because Plaintiff could only recover the amounts paid by her or on her behalf, the higher amounts
13 billed were irrelevant. Id. The trial court ruled that if the jury awarded an amount higher than that
14 actually paid, a reduction in the award could be considered in a post-trial Hanif motion. If

15   After the jury awarded the full amount billed, the defendant moved to reduce the award by the
16 amount of the discounts taken by the insurer under the agreements with the medical providers. Howell,
17 at 550. Over the plaintiff's objection, the trial court granted the motion and reduced the award but, on
18 appeal, the court reversed and found that reducing the award violated the collateral source rule. Id.

19   The California Supreme Court took a different view.

> We hold, therefore, that **an injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial**. In so holding, we in no way abrogate or modify the collateral source rule as it has been recognized in California; we merely conclude the negotiated rate differential—the discount medical providers offer the insurer—is not a benefit provided to the plaintiff in compensation for his or her injuries and therefore does not come within the rule . . .
>
> It follows from our holding that when a medical care provider has, by agreement with the plaintiff's private health insurer, accepted as full payment for the plaintiff's care an amount less than the provider's full bill, evidence of that amount is relevant to prove the plaintiff's damages for past medical expenses and, assuming it satisfies other rules of evidence, is admissible at trial. Evidence that such payments were made in whole or in part by an insurer remains, however, generally inadmissible under the evidentiary aspect of the collateral source rule. (Hrnjak v. Graymar, Inc., supra, 4 Cal.3d at p. 732.) **Where the provider has, by prior agreement, accepted less than a billed amount as full**

6

1   **payment, evidence of the full billed amount is not itself relevant on the issue of past
2   medical expenses. <u>We express no opinion as to its relevance or admissibility on
    other issues, such as noneconomic damages or future medical expenses</u>** . . .

3   Where a trial jury has heard evidence of the amount accepted as full payment by the
    medical provider but has awarded a greater sum as damages for past medical expenses,
4   the defendant may move for a new trial on grounds of excessive damages. (Code Civ.
    Proc., § 657, subd. 5.) A nonstatutory "<u>Hanif</u> motion" is unnecessary. The trial court, if
5   it grants the new trial motion, may permit the plaintiff to choose between accepting
    reduced damages or undertaking a new trial. (<u>Id.</u>, § 662.5, subd. (b).)

7   <u>Howell</u>, at 566-567, emphasis added. Therefore, under <u>Howell</u>, evidence of what is actually paid on

8   Plaintiff's behalf–even if paid by an insurance company–is properly introduced without a violation of

9   the collateral source rule.

10   The problem, however, posed by Ms. Spijkerman's opinion is that she *does not* provide *any*

11   information as to the amounts that will be paid on Plaintiff's behalf for the items listed on the life care

12   plan. Instead, she provides information *only* as to those items that will be provided to Plaintiff at no cost

13   or at a lowered cost, to him. At oral argument, counsel referred to these items being "free." However,

14   the Court recalls a standard business maxim that "There is no such thing as a free lunch." Someone

15   always pays; whether it is the government, the insurance company or the medical provider, some always

16   pays. Thus, Ms. Spijkerman's opinion, indeed, seems to constitute a violation of the collateral source

17   rule. Because the measure of damages is not only Plaintiff's out-of-pocket expenses but, instead,

18   includes <u>all reasonable sums paid on his behalf</u>, the Court is hard-pressed to see how Ms. Spijkerman's

19   opinions will be admissible.

20   In California there is a near bar, though not a complete bar, on the presentation of collateral

21   source evidence. In <u>Howell</u>, the Court recognized,

22   The collateral source rule has an evidentiary as well as a substantive aspect. Because a
     collateral payment may not be used to reduce recoverable damages, evidence of such a
23   payment is inadmissible for that purpose. Even if relevant on another issue (for example,
     to support a defense claim of malingering), under Evidence Code section 352 the
24   probative value of a collateral payment must be "carefully weigh[ed] … against the
     inevitable prejudicial impact such evidence is likely to have on the jury's deliberations."
25   (<u>Hrnjak v. Graymar, Inc.</u> (1971) 4 Cal.3d 725, 732 [94 Cal. Rptr. 623, 484 P.2d 599].)
     Admission of evidence of collateral payments may be reversible error even if
26   accompanied by a limiting instruction directing the jurors not to deduct the payments
     from their award of economic damages. (Id. at pp. 729, 734.)
27

28   <u>Howell</u> at 552. However, in this case, the federal–not state–evidentiary rules apply. <u>Quintero v. United</u>

States, 2011 U.S. Dist. LEXIS 20489 (E.D. Cal. Mar. 2, 2011) citing Bieghler v. Kleppe, 633 F.2d 531, 533 (9th Cir. 1980) (applying federal rules of evidence in Federal Tort Claims Act case despite the fact that state law provided the substantive rule of decision); see also England v. Reinauer Transp. Cos., L.P., 194 F.3d 265, 273 (1st Cir. 1999) ("When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403") (citation omitted); Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 884 (10th Cir. 2006) (holding that Federal Rules of Evidence govern in diversity case, but noting that state rules of evidence may implicate the relevancy of certain evidence under Rule 401). Though the "[f]ederal common law recognizes the collateral source rule," the federal common law "is not a rule of evidence" and, instead, the admission of evidence in this federal court action is government by the Federal Rules of Evidence. Quintero, at *14.  Thus, though recognizing the presumption that collateral source evidence will not be admitted, this Court has determined that " . . . evidence of collateral source payments is admissible under both the Federal Rules of Evidence and California's collateral source rule . . ."

In Helfend v. Southern Cal. Rapid Transit Dist., 2 Cal.3d 1, 6 (1970), the Court explained that the trial court must weigh the prejudicial effect of informing the jury of the collateral source against "the probability that the party who seeks to present [the] evidence . . . can show a proper relationship between the coverage and an issue in the case. [citation]" Id. at 71.  Federal Rules of Evidence 403 requires no less.

At this time, the Court cannot know the evidence that will be presented at trial.  Thus, though the Court has grave doubts that Ms. Spijkerman's opinion can be admitted, this determination cannot be made at this time.  Instead, Plaintiff will be required to renew his motion in limine.

**III. CONCLUSION**

In accordance with the above, it is **HEREBY ORDERED** that Plaintiff's October 14, 2011 motion to strike the Defendant's Expert Yvonne Spijkerman and preclude the use of her testimony is (Doc. 57) is **DENIED**.

///

///

8

1  This order is made without prejudice to Plaintiff raising this issue in liming or in a manner
2 required by the Court in its pretrial order and is without prejudice to Defendant providing new and
3 additional authorities that support its claim that the evidence can be admitted.

5 IT IS SO ORDERED.

6 Dated:   **November 21, 2011**                                     **/s/ Jennifer L. Thurston**
                                                                       UNITED STATES MAGISTRATE JUDGE