IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACO VAN MAANEN, | 1:10-CV-00493 AWI-JLT |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION TO STRIKE DECLARATION OF THOMAS |
| v. | BLOOMER |
| YOUTH WITH A MISSION-BISHOP; YOUTH WITH A MISSION INTERNATIONAL, INC. d/b/a YWAM-OFFICE OF THE FOUNDERS; UNIVERSITY OF THE NATIONS, INC. d/b/a YWAM-UNIVERSITY OF THE NATIONS, and DOES 1-10, | ORDER ON DEFENDANT UNIVERSITY OF THE NATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT |
| Defendants. | (Doc Nos. 78, 132) |

        This is an action for damages for injuries suffered by Plaintiff Jaco Van Maanen

("Plaintiff") while using a zip line near Mammoth Lakes, California.  As a result of this incident,

Plaintiff suffered permanent spinal cord injuries and paralysis. Plaintiff has entered into good

faith settlement agreements with Defendant Youth With a Mission-Bishop and Defendant Youth

With a Mission-Ahualani, formerly known as Youth with a Mission-International, Inc.  See

Court's Docket, Doc. Nos. 147, 148.  Defendant University of the Nations, Inc. ("University" or

"Defendant") is the sole remaining defendant.  Plaintiff is a resident of the Netherlands, and

University is incorporated and headquartered in Hawaii.  This Court has jurisdiction[1] over the

subject matter of this case pursuant to 28 U.S.C. § 1332.  Pursuant to 28 U.S.C. § 1391, venue is

proper in the Eastern District of California because a substantial part of the events giving rise to

---

[1] In its Answer, University asserted lack of personal jurisdiction as a defense, but that defense is not the subject of its motion for summary judgment.

1  Plaintiff's claims occurred in this judicial district.  Plaintiff alleges five causes of action against

2  University, all of which sound in negligence.  Specifically, Count II alleges negligence based on

3  common carrier liability; Count III alleges negligent misrepresentaton, training, and hiring;

4  Count IV alleges negligence based on vicarious liability arising from an actual agency

5  relationship; Count V alleges negligence based on vicarious liability arising from an ostensible

6  agency relationship; and Count VIII alleges negligence based on alter ego liability.  University

7  now moves for partial or complete summary judgment on all remaining claims against it.

8  Plaintiff has filed a motion to strike the declaration of Dr. Thomas Bloomer, submitted by

9  Defendant in support of its motion for summary judgment.  For the reasons that follow,

10 Plaintiff's motion to strike will be denied, and University's motion for summary judgment will

11 be granted.

12 **I.      PLAINTIFF'S MOTION TO STRIKE**

13         Plaintiff objects to University's use of the Thomas Bloomer declaration in support of its

14 motion for summary judgment.  Dr. Bloomer is the International Provost and Vice President for

15 Academic Affairs of non-party University of the Nations-International ("International"), a global

16 network of educational programs and ministries that are operated independently by some 450

17 YWAM entities around the world.  International publishes the University of Nations catalog,

18 which lists courses that independent YWAM entities pay to register in the network.  Defendant

19 contends International is a separate and distinct entity from University of the Nations, Inc.

20         Plaintiff argues that University did not include Dr. Bloomer in its initial disclosures under

21 Federal Rule of Civil Procedure 26, and it should therefore be stricken.  Rule 26(a) requires that a

22 party disclose "the name and, if known, the address and telephone number of each individual

23 likely to have discoverable information - along with the subjects of that information -that the

24 disclosing party may use to support its claims or defenses, unless the use would be solely for

25 impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(e) requires a party to supplement its

26 initial disclosures, "in a timely manner if the party learns that in some material respect the

27

28                                                    2

disclosure . . . is incomplete, or incorrect, and if the additional corrective information has not

otherwise been made known to the other parties during the discovery process or in writing."  See

Fed. R. Civ. P. 26(e)(1)(A).  Rule 37 states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or
> (e), the party is not allowed to use that information or witness to supply evidence on a
> motion, at a hearing, or at trial, unless the failure was substantially justified or was
> harmless.

See Fed. R. Civ. P. 37(c).

        University claims it did not include Dr. Bloomer in its Rule 26(a) initial disclosures

because the International entity was not named in the Complaint.  This argument is unavailing.

The plain language of Rule 26(a) required University to disclose the identity of each individual,

whether a party representative or not, who was likely to have discoverable information that may

be used to support that University's claims or defenses.  University further contends Plaintiff

elicited extensive testimony about Dr. Bloomer in the May 4-5, 2011 deposition of David Fairley

and the June 1-2, 2011 deposition of Loren Cunningham.  University argues this testimony

encompassed the information required by Rule 26(a) and therefore no supplementation was

required under Rule 26(e).  A review of the deposition excerpts submitted by University reveals

that Dr. Bloomer's name and position were mentioned several times.  Mr. Fairley and Mr.

Cunningham testified that Dr. Bloomer serves as the provost of International, a non-legal entity,

separate from University, that publishes the University of the Nations catalog and offers

accreditation to YWAM courses.  The deposition testimony also revealed that Dr. Bloomer

resides somewhere in Switzerland, and his office rents space from University in Kona, Hawaii.

        Thus, although Dr. Bloomer was not identified in  University's Rule 26(a) disclosures, his

identity, position, location, and the subject of the information he possessed were made known to

Plaintiff through the Fairley and Cunningham Depositions.  See Fed. R. Civ. P. 26(e).  The

discovery cut-off in this case was July 23, 2011, which gave Plaintiff ample time after the

Cunningham deposition to issue further written discovery or notice Dr. Bloomer's deposition.

The Court therefore finds that University's failure to include Dr. Bloomer in the initial

3

1  disclosures was harmless.  Plaintiff's motion to strike will be denied.

2  **II.     FACTUAL BACKGROUND[2]**

3        **A.     The YWAM Entities**

4        Youth With a Mission ("YWAM") is an international non-denominational Christian

5  ministry movement founded by Loren Cunningham, and his wife, Darlene, in the 1960s.  See

6  Cunningham Decl. ¶¶ 26-27.  It consists of 20,000 volunteers, located at approximately 1,000

7  different independently owned and operated entities, often referred to as "bases" or "branch

8  locations," throughout the world.  See Cunningham Decl. ¶ 45.  All defendants in this case are

9  engaged in the YWAM movement.

10       *Youth With a Mission-Bishop*

11       Youth With a Mission-Bishop, doing business as Sea and Summit Expeditions

12  ("YWAM-Bishop"), is a California religious corporation with a business address in Bishop,

13  California.  See DUMF No. 3.  YWAM-Bishop is governed by its own Board of Directors that is

14  independently selected, and meets regularly and operates pursuant to the requirements of its

15  corporate bylaws.  Its officers are appointed by the Board of Directors of Sea and Summit

16  Expeditions.  See DUMF No. 3.  David Fairley is the Director of YWAM-Bishop.  See Fairley

17  Decl. ¶ 2.  Plaintiff incurred the injuries that are the subject of this litigation while he was

18  enrolled in a wilderness leadership training course at YWAM-Bishop.  See Fairley Decl. ¶¶ 14-

19  15.

20       *Youth With a Mission International, Inc.*

21       Youth With a Mission-Ahualani, formerly known as Youth with a Mission-International,

22  Inc., ("YWAM-Ahualani") is a domestic nonprofit corporation incorporated in Hawaii.  See

23

24        [2] "DUMF" refers to Defendants' Undisputed Material Facts.  See Court's Docket, Doc.
   No. 79.  "PSDF" refers to Plaintiff's Statement of Disputed Facts.  See Court's Docket, Doc. No.
25  103.  "PRDUMF" refers to Plaintiff's Response to Defendants' Undisputed Material Facts.  See
   Court's Docket, Doc. No. 104.  The Court will note any factual disputes where they exist, and,
26  for purposes of summary judgment, will construe any ambiguities in the light most favorable to
   Plaintiff, the non-moving party.  See Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir.
27  2003).

28                                    4

Court's Docket, Doc. No. 105, Ex. F.  Loren Cunningham, the founder of the YWAM movement, currently serves as the President of YWAM-Ahualani.  See Cunningham Depo. at 36. The Hawaii Department of Commerce and Consumer Affairs and a recent tax return list YWAM-Ahualani's address as 75-5851 Kuakini Highway, Ste. 210, Kailua Kona, Hawaii.  See Court's Docket, Doc. No. 105, Exs. F, G.  Mr. Cunningham has testified that those documents were completed erroneously, and the true address of YWAM-Ahualani is on Mamalahoa Highway, Kealakekua, Hawaii 96750.  See Cunningham Depo. at 44.

   *University of the Nations, Inc.*

   Defendant University of the Nations, Inc.,[3] is a not-for-profit public benefit corporation incorporated in Hawaii, providing education services to students.  See DUMF No. 1. Defendant's mailing address is 75-5851 Kuakini Hwy, Kailua Kona, Hawaii - the same address listed by the Hawaii Department of Commerce and Consumer Affairs for Youth With a Mission-Ahualani.  See Cunningham Depo. at 95, 286.  University is governed by its own Board of Directors that is independently selected, and meets regularly and operates pursuant to the requirements of its corporate bylaws.  See DUMF No. 2.  The officers of University are appointed by the Board of Directors of University, and Loren Cunningham currently serves as President.  See DUMF No. 2.  Mr. Cunningham has testified that University of the Nations, Inc. was formerly known as Pacific and Asia Christian University, Inc.  ("PACU").  See Cunningham Depo. at 238-240.

   *University of the Nations-International*

   In the moving papers, the parties also refer to a non-defendant, non-legal entity known as University of the Nations-International ("International"), or the "virtual" or "global" University of the Nations.  Defendant contends International is an unincorporated global network distinct

---

[3] Throughout the moving papers, Defendant refers to itself as "UofN-Kona."  Plaintiff argues there is no legal entity known as "UofN-Kona."  See PSDF No. 1.  For purposes of summary judgment, the Court will use "University," or "Defendant" when referring to University of the Nations, Inc.

from University of the Nations, Inc.  See Cunningham Depo. at 197-198.  According to

Defendant, International does not own, operate, or administer any campus, branch or other

location.  See Bloomer Decl. ¶ 15.  YWAM entities may choose to list one or more of their

training programs in the catalog published by International, and International grants degrees and

diplomas certifying the accumulation of credits from registered courses.  See Bloomer Decl. ¶¶

18-19.  Defendant maintains International does not provide any educational services, and does

not have the power to direct the manner or method of the program, the tuition or fees, the

teachers, or any other operational aspect of the registered courses.  See Bloomer Decl. ¶¶ 23, 28-

29, 38; Cunningham Decl. ¶¶ 76-82.  Defendant contends University of the Nations, Inc., on the

other hand, is merely another YWAM base that offers courses in the International network.  See

Fairley Decl. ¶ 33; Cunningham Decl. ¶ 65.

Plaintiff argues that although Mr. Cunningham testified that the University of the Nations

course catalog is published by International, the course catalog states:

**University of the Nations: History**
Eighteen years after its inception in 1960, Youth With a Mission founded the Pacific &
Asia Christian University (PACU) in Kona, Hawaii . . . The Board of Regents
unanimously adoped the new name, University of the Nations (U of N), at their meeting
in 1988.  The name change took place officially in 1989

The U of N is unique in its international missionary training scope with school locations
in 140 nations on all continents. . . .The University of Nations [sic] is unique. It is global,
cross-cultural, and adaptable.  Approximately 15,000 students a year take one or more
registered courses in 60 languages in 400 locations.

See Court's Docket, Document 105, Ex. J.  Plaintiff argues that this, along with the fact that the

address for University and International are the same, no legal documents exist for International,

and the course catalog does not differentiate between University and International suggests that

University and International are a single entity.  See PSDF No. 3; Cunningham Depo. at 95, 255,

286, 298, 314; Court's Docket, Doc. No. 105, Exs. I, K, L.  The Court views the facts in the light

most favorable to Plaintiff and will therefore assume, for purposes of summary judgment, that

University and International are the same entity.

**B.    Plaintiff's Injury**

The parties largely agree on the facts surrounding the injury giving rise to this litigation. In 2007, Plaintiff Jaco Van Maanen, who was 21 years old at the time, enrolled in a Youth With a Mission Discipleship Training School ("DTS") course at Youth With a Mission Heidebeek, a YWAM base in the Netherlands.  See Pl.'s Depo. at 41.  In January 2008, as he was nearing the end of his DTS course, he began researching other opportunities within the YWAM movement to develop his Christian missionary skills while participating in outdoor activities.  See Pl.'s Depo. at 280.   He turned to the online catalog of the University of the Nations, and found a course entitled School of Outdoor Adventure and Recreation ("SOAR") located at YWAM-Bishop (doing business as Sea and Summit Expeditions) in the United States.  See Pl.'s Depo. at 147-50. Plaintiff made the decision to enroll in the SOAR course in reliance on his belief that Sea and Summit Expeditions was an entity that was part of and subscribed to the values of the YWAM movement.  See DUMF No. 11. Plaintiff consulted the Sea and Summit website, applied for the SOAR course, and was accepted in August 2008.  See Court's Docket, Doc. No. 105, Ex. O.  In late November 2008, after enrolling in the SOAR course, Plaintiff emailed Sea and Summit Expeditions asking for more information on how SOAR is part of the University of the Nations, because he thought he might qualify for government financial assistance in the Netherlands if he were enrolled in a college course.  See Court's Docket, Doc. No. 104, Ex. 18.  Ultimately, Plaintiff concluded he could not get government aid for the SOAR course, and Plaintiff did not enroll in the SOAR course in order to earn credits toward a University degree.  See DUMF No. 12; Pl.'s Depo. at 135-36.

In March 2009, Plaintiff traveled from his home in the Netherlands to the YWAM-Bishop campus and began the SOAR course.  See Pl.'s Depo. at 217.  After successfully completing the first portion of the course, Plaintiff, the other students, and the SOAR instructors traveled to a YWAM-Bishop campsite in the Inyo National Forest near Mammoth, California.  On June 17, 2009, while at this campsite, Plaintiff, the other students, and one of the SOAR course instructors

1    hiked a short distance to a zip line that had been erected for the campers. See Cokely Depo. at

2    20, 49-50; Fairley Depo. at 129; Fairley Decl. ¶ 15.  The zip line was not open to the public at

3    large,[4] and no admission was charged.  See DUMF No. 10.  Plaintiff was the first student to ride

4    the zip line.  When he propelled from the top of the zip line, he accelerated rapidly and collided

5    with a tree connected to the base of the zip line, as well as a metal ladder placed near that tree.

6    See Pl.'s Depo. at 196.  Plaintiff was taken to a hospital in Mammoth, California, and was

7    ultimately diagnosed with a spinal cord injury resulting in paralysis known as quadriplegia or

8    tetraplegia.  See Pl.'s Depo. at 301.

9         On March 17, 2010, Plaintiff filed the instant action against YWAM-Bishop, YWAM-

10   Ahualani, and University.  Plaintiff alleged that YWAM-Bishop had negligently failed to provide

11   adequate supervision of the zip line and had breached its duty to use due care in erecting the zip

12   line.  Plaintiff alleged direct negligence, as well as negligence based on actual agency, ostensible

13   agency, and alter ego against YWAM-Ahualani and University.  Plaintiff also alleged negligence

14   based on common carrier liability against all three Defendants.  As discussed above, Plaintiff has

15   settled his claims against YWAM-Bishop and YWAM-Ahualani, leaving only the claims against

16   University.

17        **C.    Relationship Between University of the Nations, Inc. and YWAM-Bishop**

18        University and YWAM-Bishop are separate and independent entities, and they have not

19   commingled funds; shared revenue; shared assets; shared or had in common directors, officers,

20   staff members, offices, real or personal property or professional service providers.  Neither

21   University nor YWAM-Bishop has appointed or participated in the appointment or supervision

22   of the other's officers or staff.  See Fairley Decl. at ¶¶ 5-19, 19-26; Cunningham Decl. at ¶¶ 5, 7-

23   10, 11-24; Bloomer Decl. at ¶¶ 2-44.  However, Plaintiff asserts the following facts suggest that

24   University does have the right to control certain aspects of YWAM-Bishop, including matters of

25

26        [4] Plaintiff disputes this and argues that there were other members of the public generally
     using the national forest where the zip line was located, and access to the zip line was available
27   to the public.  See PRDUMF No. 10; Fairley Depo. 151-53.

28                                          8

mission, staff members, admission of students and other important decisions as to the manner or means of conducting the operation:

- In order for the SOAR course to be registered with University of the Nations, the course needs to contain the YWAM foundational values and the branch location must submit a form and registration fee to University. See PRDUMF No. 5; Fairley Depo. at 51, 52, 63, 317.

- YWAM-Bishop is required to register the SOAR course every couple of years to let the university know what they are doing in the course. See PRDUMF No. 5; Fairley Depo. at 51, 52, 63, 317, 318, 325.

- Radical course changes must be submitted by the branch locations, including YWAM-Bishop, to the university for approval. See PRDUMF No. 5; Fairley Depo. at 321.

- University of the Nations, Inc. has the exclusive control to accredit courses offered at its branch locations, like YWAM-Bishop. See PRDUMF No. 5; Court's Docket, Doc. No. 105, Ex. J.

- In its catalog, University of the Nations, Inc. has made representations that teachers of course materials are employees of YWAM International and has reserved the right to make changes to schedules or course offerings. See PRDUMF No. 5; Fairley Depo. at 42-23, 316; Court's Docket, Doc. No. 105, Ex. J at 11, 27.

- Each student pays a $25 registration fee as part of its tuition, with the fee going to the university to register credits. See PRDUMF No. 5; Fairley Depo. at 321.

- YWAM-Bishop submits to the authority of the greater YWAM leadership. See PRDUMF No. 5; Fairley Depo. at 303.

In the course of enrolling in SOAR, Plaintiff read and/or signed various types of documentation that YWAM-Bishop transmitted to Plaintiff:

- A description of Sea and Summit Expeditions (YWAM-Bishop) and of SOAR, that was published by Sea and Summit Expeditions on its website (Court's Docket, Doc. No. 104, Ex. 13)

- Plaintiff's application for admission to SOAR executed by Plaintiff (Court's Docket, Doc. No. 104, Ex. 9)

- Sea and Summit Expedition's written notification to Plaintiff of his admission to SOAR (Court's Docket, Doc. No. 104, Ex. 10)

- The contract for enrollment between Plaintiff and Sea and Summit Expeditions for SOAR (Court's Docket, Doc. No. 104, Exs. 7, 8)

- The transmittal to Plaintiff of the official letter signed by Sea and Summit Expedition addressed to the United States of America providing sponsorship for

9

Plaintiff's entry visa (Court's Docket, Doc. No. 104, Ex. 12)

- • The release of claim/acknowledgment of risk written agreement between Plaintiff and Sea and Summit Expeditions (Court's Docket, Doc. No. 104, Ex. 7)

- • Sea and Summit Expeditions' written assurance to Plaintiff that Sea and Summit Expeditions would provide personal injury liability insurance covering Plaintiff while engaged in SOAR activities (Court's Docket, Doc. No. 104, Ex. 11)

See DUMF No. 6; Pl.'s Depo. at 31, 92-105; 109; 113; Fairley Decl. ¶ 18.  The documentation that YWAM-Bishop made available to Plaintiff during the course of his enrolling in SOAR, that he read and/or signed, reflected that Plaintiff was contracting with Sea and Summit Expeditions (YWAM-Bishop) for training services that Sea and Summit Expeditions would deliver to Plaintiff for consideration in the form of tuition payments that Plaintiff would make to Sea and Summit Expeditions.  See DUMF Nos. 7-8; Pl.'s Depo. at 31, 92-105; 108-109; Fairley Decl. ¶¶ 4, 12, 18; Court's Docket, Doc. No. 104, Ex. 14.  Defendant contends, therefore, that YWAM-Bishop had the exclusive right to control the means and method by which it would deliver the SOAR course to Plaintiff.

Plaintiff disputes this characterization, and alleges that the University of the Nations course catalog specifically indicated that Plaintiff was contracting with YWAM-Bishop as the agent of the principal, University of the Nations, Inc., and therefore University had the right to control the means and method by which YWAM-Bishop would deliver SOAR to Plaintiff.  See PRDUMF Nos. 7-8; Court's Docket, Doc. No. 105, Ex. J at 9, 11, 22, 26, 50, 99, 154.  Plaintiff further contends that email exchanges between Plaintiff and SOAR instructor Aaron Fisher, wherein Mr. Fisher refers to YWAM-Bishop and University of the Nations as "we," suggest YWAM-Bishop was the agent of University.  See PRDUMF No. 7; Court's Docket, Doc. No. 105, Exs. O, P.

Defendant maintains Sea and Summit Expeditions' personnel had ultimate authority over, and were the day-to-day managers of, the SOAR course, and Plaintiff observed this to be the case during his participation in the course.  See DUMF No. 9; Pl.'s Depo. at 60-61, 65-66, 259, 261; Fairley Depo. at 61-62; Fairley Decl. ¶¶ 13-15, 18; Cunningham Decl. ¶¶ 22-25.  Plaintiff

10

disputes this, see PRDUMF No. 9, and submits the following evidence in support of his

contention that University had the ultimate authority over the SOAR course, and Plaintiff

observed this to be the case:

- In the course catalog, the University of the Nations, Inc. states that it "reserve[s] the right to change schedules and course offerings." (Court's Docket, Doc. No. 105, Ex. J)

- YWAM-Bishop submits to the authority of the greater YWAM leadership (Fairley Depo. at 303)

- In order for the SOAR course to be registered with the University of the Nations, the course needed to contain the YWAM foundational values; YWAM-Bishop needed to submit a form and registration fee to the university; YWAM-Bishop is required to register the SOAR course every couple of years to let the university know what they are doing in the course; annual reports are prepared; and YWAM-Bishop is required to provide information to the university describing the course in a weekly manner, identifying speakers and discussing what will be taught spiritually (Fairley Depo. at 51-52, 63, 317-318, 325)

- Radical changes to the course materials must be submitted by the branch locations to University for approval (Fairley Depo. at 321)

- Plaintiff believed that the YWAM movement had ownership over everything within it, including YWAM-Bishop (Pl.'s Depo. at 284)

- Plaintiff believed that University owned the assets of YWAM-Bishop and the SOAR course at the time he made the decision to enroll in the SOAR course (Pl.'s Depo. at 285-86)

- From his prior experience, Plaintiff knew that each branch has its own base-directing group, but that is all part of the YWAM-International, "it's all linked together" (Pl.'s Depo. at 288-89)

- The SOAR course was part of YWAM-Bishop and the parents of YWAM-Bishop are YWAM-International and the University of the Nations (Pl.'s Depo. at 460-61)

- Plaintiff's understanding from the course catalogs, websites and what had been communicated to him during his DTS was that "everything goes back to the head office in Kona. Everything is being part of the international YWAM movement which has its headquarters in Kona." (Pl.'s Depo. at 471)

- Regarding the influence over the courses that YWAM-Bishop offered, Plaintiff believed that it was reasonable that the University of the Nations and YWAM International, Inc. "have to be arranged" and make sure that the courses "fit within the way things are done" (Pl.'s Depo. at 474-75)

Finally, Defendant contends Plaintiff's experience with YWAM before starting the SOAR

program at YWAM-Bishop provided him with evidence of decentralized control[5] of the YWAM

entity.  See DUMF No. 13; Pl.'s Depo. at 67-77, 81-82, 92-105, 108-09, 291, 416, 453, 469-71,

476, 478, 480, 496-97; Court's Docket, Doc. No. 104, Exs. 1, 3, 4, 7-14, 17, 26-27.

## III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

Columbia Broadcast System, 368 U.S. 464, 467 (1962);  Southern California Gas Co. v. City of

Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  Under summary judgment practice, the moving

party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Miller v. Glenn Miller Productions, Inc.,, 454

F.3d 975, 987 (9th Cir. 2006).  A fact is material if it could affect the outcome of the suit under

the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Miller, 454 F.3d at 987.   "[W]here the nonmoving party will bear the burden of proof at trial on

a dispositive issue, a summary judgment motion may properly be made in reliance solely on the

'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.;  Fortyune v.

American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  Celotex Corp. 477 U.S. at 322;

---

[5] Plaintiff disputes this and alleges that Plaintiff's experience with YWAM before starting
the SOAR program at YWAM-Bishop provided him with evidence that YWAM-Bishop was part
of the University of the Nations, Inc.  See PRDUMF No. 13; Pl.'s Depo. at 284-86, 288-89, 460-
61, 471, 474-75.

1    Miller, 454 F.3d at 987.   "[A] complete failure of proof concerning an essential element of the

2    nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. 477 U.S. at

3    322.  In such a circumstance, summary judgment should be granted, "so long as whatever is

4    before the district court demonstrates that the standard for entry of summary judgment, as set

5    forth in Rule 56(c), is satisfied." Id. at 323.

6          If the moving party meets its initial responsibility, the burden then shifts to the opposing

7    party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

8    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities

9    Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies,

10   Inc.,210 F.3d 1099, 1103 (9th Cir. 2000).   The opposing party cannot "'rest upon the mere

11   allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific

12   facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records,

13   515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987.

14   In attempting to establish the existence of this factual dispute, the opposing party is required to

15   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

16   in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;

17   First Nat'l Bank, 391 U.S. at 289; Miller, 454 F.3d at 987.  The opposing party must demonstrate

18   that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

19   the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cline v. Industrial

20   Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000), and that the

21   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

22   nonmoving party, Anderson, 477 U.S. 248-49; In re Caneva, 550 F.3d 755, 761 (9th Cir. 2008);

23   Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th Cir. 2006).

24          In the endeavor to establish the existence of a factual dispute, the opposing party need not

25   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

26   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

27

28                                                    13

trial." First Nat'l Bank, 391 U.S. at 290;  Giles v. General Motors Acceptance Corp., 494 F.3d

865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings

and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475

U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments);

International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

    In resolving the summary judgment motion, the Court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Rule 56(c); Poller, 368 U.S. at 468; Price v. Sery, 513 F.3d 962, 965 n.1 (9th Cir. 2008);

Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1064 (9th Cir. 2007).  "[I]n ruling on a

motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all

justifiable inferences are to be drawn in that party's favor.'" Hunt v. Cromartie, 526 U.S. 541,

552 (1999) (quoting Anderson, 477 U.S. at 255); Miller, 454 F.3d at 987; Stegall v. Citadel

Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Finally, to demonstrate a genuine issue, the

opposing party "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587

(citation omitted).

    Additionally, the Court has the discretion in appropriate circumstances to consider

materials that are not properly brought to its attention, but the Court is not required to examine

the entire file for evidence establishing a genuine issue of material fact where the evidence is not

set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of

Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237

F.3d 1026, 1031 (9th Cir. 2001).

   **B.    Defendant's Argument**

    Defendant first contends it is undisputed that University does not have day-to-day, or any

other, control over YWAM-Bishop.  Moreover, the two entities have not disregarded their

14

separate corporate status such that University is vicariously liable for YWAM-Bishop's

negligence based on an actual agency or alter ego theory.  Next, Defendant argues it is entitled to

partial summary judgment on Plaintiff's ostensible agency claim because Plaintiff did not rely on

the belief that University was YWAM-Bishop's agent, did not change his position in reliance on

that belief, and had no reasonable belief of an agency relationship.  Finally, Defendant argues

University had no legal duty to Plaintiff and is therefore also entitled to summary judgment on

Plaintiff's direct negligence claims based on common carrier liability and negligent

misrepresentation, training, and hiring.

### C.    Plaintiff's Opposition

In opposition to Defendant's motion, Plaintiff first notes that he "recently informed

counsel for University of the Nations that he would be voluntarily dismissing his alter ego

claim."  See Court's Docket, Doc. No. 105, Ex. B.  The record currently reflects that Plaintiff has

taken no action to dismiss the alter ego claim, but he appears to have abandoned that claim, as he

did not address any arguments made by Defendant on this issue.  With respect to actual agency,

Plaintiff alleges there is a genuine and triable issue of fact as to whether an actual agency

relationship existed between University and YWAM-Bishop because University had the

exclusive right to decide whether to designate YWAM-Bishop as a branch campus location,

whether to approve the curriculum of the SOAR course for credit, and charged a $25 registration

fee from each student's tuition.  Plaintiff further argues there is a genuine triable issue of material

fact as to whether an ostensible agency relationship between University and YWAM-Bishop

existed because Plaintiff believed he was dealing with University of the Nations in connection

with the activities of the SOAR course.  Plaintiff also contends there is a genuine and triable

issue of material fact as to whether University was directly negligent because it owed Plaintiff a

duty of care to erect a safe zip line, hire knowledgeable instructors, provide adequate supervision,

and have in place policies and procedures designed to ensure the safety of its students.  Finally,

Plaintiff maintains that University is a common carrier for its operation of the zip line at issue

here, and is therefore subject to a heightened standard of care.  Plaintiff contends University is a common carrier because the zip line was available to anyone who paid tuition.  For these reasons, Plaintiff argues summary judgment is precluded.

**IV.    DISCUSSION**

For purposes of summary judgment, the Court will assume that YWAM-Bishop was negligent in its supervision of Plaintiff and the zip line.  The only remaining issues, therefore, are: 1) whether there is any basis on which to hold University vicariously liable for YWAM-Bishop's negligence; and 2) whether University was directly negligent.  At the heart of each of these issues is the relationship between University and YWAM-Bishop.

**A.    Count II: Common Carrier Liability**

Under California law, "[e]very one who offers to the public to carry persons, property or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." Cal. Civ.Code § 2168; Platzer v. Mammoth Mountain Ski Area, 104 Cal.App.4th 1253, 1257, 128 Cal.Rptr.2d 885 (Cal. App. 2002). "To be a common carrier, the entity merely must be of the character that members of the general public may, if they choose, avail themselves of it." Squaw Valley Ski Corp. v. Superior Court, 2 Cal.App.4th 1499, 1509–10, 3 Cal.Rptr.2d 897 (Cal. App. 1992). "The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently; and hence he is regarded, in some respects, as a public servant." People v. Duntley, 217 Cal. 150, 164, 17 P.2d 715 (Cal. 1932).  In contrast, private carriers are those who carry for hire, but do not come within the definition of a common carrier.  Samuelson v. Public Utilities Com., 36 Cal.2d 722, 730, 227 P.2d 256 (Cal. 1951); Duntley, 217 Cal. at 163–64, 17 P.2d 715.  Private carriers "make no public profession that they will carry for all who apply, but who occasionally or upon the particular occasion undertake for compensation to carry the goods of others upon such terms as may be agreed upon." Webster v. Edgar, 3 Cal.App.4th 784, 788, 4 Cal.Rptr.2d 714 (Cal. App. 1992).  Private carriers are not bound to carry for any reason unless they enter into a special agreement to do so.  Associated Pipe Line Co. v. R.R.

16

Comn'n., 176 Cal. 518, 169 P. 62 (Cal. 1917).  Factors to consider in determining whether a

defendant is a common carrier are whether: (1) the defendant maintains a regular place of

business for the purpose of transportation; (2) the defendant advertises its services to the general

public; and (3) the defendant charges standard fees for its services.  See Gradus v. Hanson

Aviation, 158 Cal.App.3d 1028, 1048, 205 Cal. Rptr. 119 (Cal. App. 1984).

   Common carriers are held to a higher standard of care than private carriers.  Section 2100

of the California Civil Code provides:

> A carrier of persons for reward must use the utmost care and diligence for their safe
> carriage, and must provide everything necessary for that purpose, and must exercise to
> that end a reasonable degree of skill.

Cal. Civ.Code § 2100.  Section 2101 states: "A carrier of persons for reward is bound to provide

vehicles safe and fit for the purposes to which they are put, and is not excused for default in this

respect by any degree of care."  Cal. Civ.Code § 2101.  Thus, a common carrier is under a duty to

transport the persons he is carrying "with reasonable skill and with the utmost prudence and

caution."  Gomez v. Walt Disney Company, 35 Cal. 4th 1125, 1127, 113 P.2d 41, 42 (Cal. 2005).

   There is no dispute that the zip line at issue here was erected by YWAM-Bishop.

Plaintiff's common carrier argument with respect to University appears to be that YWAM-

Bishop was acting as University's agent when it erected the zip line.  The common carrier

analysis, therefore, applies to YWAM-Bishop. With respect to the first factor, there is no

evidence that YWAM-Bishop maintains a place of regular business for the purpose of

transportation.  YWAM-Bishop is engaged in offering outdoor recreation and Christian ministry

programs.  The zip line was a temporary structure available at one of YWAM-Bishop's satellite

campsites for only a few days.  The national forest where the zip line was erected technically was

open to the public, but there is no evidence that use the zip line itself was offered to the public.

Similarly, there is no evidence that YWAM-Bishop charges standard fees for use of its zip line.

Plaintiff contends the tuition charged by YWAM-Bishop for its programs is similar to the

admission fee or lift ticket charged by roller coaster or ski lift operators, who have been found to

17

be common carriers.  See Gomez, 35 Cal. 4th at 1127, 13 P.3d at 42; Squaw Valley Ski Corp., 2 Cal.App.4th at 1509–10.  Use of the zip line, however, is incidental to the other services and amenities paid for by the tuition fee.  The zip line was limited to a specific group of campers who had applied for and were admitted to a YWAM-Bishop program.

Where there are no material facts in dispute, "[w]hether a party is a common carrier within the meaning of Civil Code section 2168 is a matter of law. . . ."  Squaw Valley Ski Corp., 2 Cal.App. 4th at 1506.  The court finds that Plaintiff has failed to allege a triable issue as to whether YWAM-Bishop was a common carrier.  Accordingly, summary judgment on Count II will be granted in favor of Defendant.

## B.    Count III: Negligence - False Representation, Training and Hiring

A negligence claim generally requires a plaintiff to prove the following elements: (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury.  See Friedman v. Merck & Co., 107 Cal. App. 4th 454 (Cal. App. 2003);  Seo v. All-Makes Overhead Doors, 97 Cal.App.4th 1193, 1202 (Cal. App. 2002); Jackson v. Ryder Truck Rental, Inc., 16 Cal.App.4th 1830, 1837 (Cal. App. 1993).  Plaintiff alleges University owed a common law duty of care to Plaintiff and violated it by (1) making false representations that its personnel were properly trained and qualified to conduct zip line activities; (2) failing to have safety policies for SOAR students; and (3) failing to hire faculty who were properly trained in zip lines.  "The existence of a duty of care is a question of law to be determined by the court alone."  Lum v. County of San Joaquin,756 F.Supp.2d 1243, 1254 (E.D. Cal. 2010) (citing Ballard v. Uribe, 41 Cal.3d 564, 572, fn. 6, 224 Cal.Rptr. 664, 715 P.2d 624 (Cal. 1986)).

Duty requires a special relationship between the defendant and the plaintiff.  See id. at 1254.  The California Supreme Court has held that where there is no relationship between plaintiff and defendant, and public policy does not dictate imposing a duty on the defendant, no

18

legal duty of care exists.  See Parsons v. Crown Disposal Co., 15 Cal. 4th 456, 483, 936 P.2d 70 (Cal. 1977).  In determining whether to impose a legal duty, courts take into account the following policy considerations: "[1] foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of connection between the defendant's conduct and the injury, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost, and prevalence of insurance for the risk involved." Friedman, 107 Cal. App. 4th at 465 (quoting Rowland v. Christian, 69 Cal.2d 108, 113 (Cal. 1968)).

Plaintiff argues the duty of care in the instant case arises from the university-student relationship between Defendant and Plaintiff.  Plaintiff alleges all the information and documentation provided led him to believe that YWAM-Bishop was a branch campus of the University of the Nations, and that International (the publisher of the course catalog) and University (the campus in Hawaii) were a single entity.  Even viewing these facts in the light most favorable to Plaintiff, Plaintiff's belief is insufficient to establish a duty of care.  While Plaintiff may have learned of the SOAR course from the University of the Nations course catalog, it is undisputed that he contracted only with YWAM-Bishop, doing business as Sea and Summit Expeditions.  He signed written agreements only with Sea and Summit Expeditions for services to be provided only by Sea and Summit Expeditions, he paid tuition only to Sea and Summit Expeditions, and he entered the United States on a visa sponsored by Sea and Summit Expeditions.  Sea and Summit Expeditions provided Plaintiff with written assurance that he would be covered by a personal injury liability policy.  Although YWAM-Bishop paid a registration fee to list the SOAR course in the University of the Nations course catalog, provided required information on course content, and paid an additional small fee for each enrolled student who sought course credit from University of the Nations, this does not suggest, as Plaintiff

argues, that University had any control over YWAM-Bishop's safety policies, or the hiring, training, and supervision of YWAM-Bishop's staff.  The record contains no evidence tending to show that Plaintiff was actually enrolled in the University of the Nations, or that he was seeking to earn college credit from University of the Nations for his participation in the SOAR course. The Court therefore finds that no special relationship existed between Plaintiff and University.

Plaintiff also argues that the Friedman policy considerations favor imposing a legal duty upon Defendant.  With respect to the first factor, the Court agrees it was foreseeable that an improperly erected zip line would cause an accident, but there is no evidence that University approved or was even aware of the zip line's existence.  As for the second and third factors, it is undisputed that Plaintiff was injured, but the connection between University's conduct and Plaintiff's injury is attenuated.  University did not erect the zip line, or leave it in the state of disrepair that allegedly caused Plaintiff's injuries.  Plaintiff makes no argument as to the fourth Friedman factor, and the Court can find no reason to assign moral blame to University for Plaintiff's injuries.  With respect to the fifth factor, Plaintiff argues that imposing a duty on University is likely to prevent future injuries, and notes that YWAM-Bishop suspended the SOAR course in part because of Plaintiff's accident.  The Court agrees that imposing a duty might prevent further injuries in YWAM-Bishop courses registered with University, but it would not prevent YWAM-Bishop from offering courses without registering them with University. Plaintiff further argues that the burden of imposing a duty upon Defendant would be minimal because Defendant already requires YWAM-Bishop to seek approval to offer a course for university credit, pay a registration fee, submit a written summary of what will be taught, and seek approval for any radical changes to course content.  Plaintiff suggests that requiring Defendant to consider potential safety hazards and require safety protocols would merely be an extension of what Defendant already does.  The Court disagrees.  Imposing a legal duty on Defendant for personal injuries incurred by students participating in courses taught at hundreds of YWAM bases listed in the course catalog would amount to a tremendous burden.  It would

require Defendant to go far beyond its current role of collecting a nominal registration fee and vetting course content to ensure that religious instruction adheres to YWAM values.  Defendant would be forced to expend considerable time and resources reviewing the day-to-day operations of each course, and would be liable for injuries to all students participating in the courses. Finally, Plaintiff makes no argument with respect to the seventh <u>Friedman</u> factor, the availability, cost, and prevalence of liability insurance for the risk involved, but the record suggests that YWAM-Bishop did carry personal injury liability insurance.  Plaintiff has proffered no evidence regarding the availability or cost of similar coverage for University.  On balance, the Court finds that public policy considerations do not favor imposing a duty of care on University. Accordingly, the Court will grant summary judgment on Count III in favor of Defendant.

### C.    Count IV: Actual Agency

Plaintiff alleges University is liable for the negligence of YWAM-Bishop under a principal-agent theory.  In California, "[a]n agent is one who represents another, called the principal, in dealings with third persons."  Cal. Civ. Code § 2295.  An agency is actual when the agent really is employed by the principal.  Cal. Civ. Code § 2299.  The central inquiry under the agency theory of liability is "'whether the degree of control exerted over the subsidiary by the parent is enough to reasonably deem the subsidiary an agent of the parent under traditional agency principles.'"  <u>Gregorie v. Alpine Meadows Ski Corp.</u>, 2009 WL 2425960, at *5 (E.D. Cal. Aug. 7, 2009) (quoting <u>Sonora Diamond Corp. V. Superior Court</u>, 83 Cal.App.4th 523, 541 (Cal. App. 2000)).  As the California Supreme Court has stated:

> [I]f a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parent acts, or nothing more than an incorporated department of the parent, the subsidiary will be deemed to be the agent of the parent in the forum state.

<u>Sonora Diamond Corp. v. Superior Court</u>, 83 Cal.App.4th 523, 541-542, 99 Cal.Rptr.2d 824, 838-39 (Cal. App. 2000).  The control exercised in a typical parent-subsidiary relationship is insufficient to create an agency relationship.  Rather, "the parent must be shown to have moved

21

1    beyond the establishment of general policy and direction for the subsidiary and in effect taken

2    over performance of the subsidiary's *day-to-day* operations in carrying out that policy."  Id. at 542

3    (citing Calvert v. Huckins, 875 F.Supp. 674, 679 (E.D. Cal. 1995); Rollins Burdick Hunter of So.

4    Cal., Inc. v. Alexander & Alexander Servs., Inc., 206 Cal.App.3d 1, 9 (Cal. App. 1988);

5    American Intern. Airways v. Kitty Hawk Group, 834 F.Supp. 222, 225 (E.D.Mich.1993);

6    Bellomo v. Pennsylvania Life Co., 488 F.Supp. 744, 745 (S.D.N.Y. 1989)).  It is not essential

7    that the right of control be exercised.  All that is needed is the existence of the right of control.

8    See Malloy v. Fong, 37 Cal.2d 356, 370, 232 P.2d 241, 249 (Cal. 1951).

9        Plaintiff argues that an agency relationship between Defendant and YWAM-Bishop exists

10   because Defendant has the right to control YWAM-Bishop by requiring that the course work

11   contain certain foundational values, requiring annual paperwork concerning course content,

12   collecting a $25 registration fee from each student's tuition, and having certain mandates

13   regarding which entities can refer to themselves as part of YWAM and University of the Nations.

14   Plaintiff cites a case involving a minor plaintiff who was injured by a divinity student's reckless

15   driving while attending the San Mateo Presbyterian Church's vacation Bible school.  See Malloy,

16   27 Cal.2d at 362.  In that case, the California Supreme Court held that the there was an agency

17   relationship between the Presbytery of San Francisco and the San Mateo Presbyterian church,

18   based on the following factors: (1) the alleged principal pays some or all of the alleged agent's

19   expenses; (2) the alleged principal has the authority to approve or disapprove of who the alleged

20   agent hires, and (3) the alleged principal is responsible for extending into new localities the type

21   of "movement" the alleged agent supports.  See Malloy, 27 Cal.2d at 366.  Plaintiff argues these

22   factors are satisfied by the evidence in the instant case.  But Malloy is distinguishable because the

23   California Supreme Court relied on the fact that the Presbytery had the right to install and remove

24   its ministers, to approve or disapprove their transfer, and to supervise and control the activities of

25   the local churches, particularly those in the mission stage, like the San Mateo church.  See id. at

26   370.  Here, there is no indication that Defendant had the right to hire or supervise YWAM-

27

28                                              22

Bishop's staff, or to control the activities of YWAM-Bishop.

Indeed, other courts have found no agency relationship under similar facts.  In <u>Ross v. Colorado Outward Bound School, Inc.</u>, 603 F.Supp. 306 (W.D.N.Y. 1985), the court considered the agency relationship in determining whether there was personal jurisdiction over the alleged parent corporation, Outward Bound, Inc., for the activities of its subsidiary, Colorado Outward Bound School, Inc., where the plaintiff's daughter had died while participating in a mountain climbing exercise.  <u>Id.</u>  The <u>Ross</u> court declined to find an agency relationship even though individual Outward Bound schools paid administrative fees to Outward Bound, Inc.; Outward Bound, Inc., granted rights to operate and promote Outward Bound Schools; there was a minor degree of confluence of directors and organizational personnel; and some Colorado Outward Bound School, Inc., administrators attended Outward Bound, Inc., annual meetings.  <u>Id.</u> at 310. Instead, the court held that the evidence established only that Outward Bound, Inc., had a nationwide promotional function for Colorado Outward Bound School, Inc., and the mere existence of a garden-variety parent-subsidiary or franchisor-franchisee relationship was insufficient to establish personal jurisdiction based on agency.  <u>Id.</u>  This Court has also held there was no agency relationship between Alpine Meadows and its parent, Powdr Corporation, in a case involving the death of a skiier at Alpine Meadows ski resort.  <u>See</u> <u>Gregorie</u>, 2009 WL 2425690, at *6.  There was evidence that Powdr reviewed Alpine's budget, expenses, and master plan, and was involved in major decision making, but the Court found this did not demonstrate day-to-day control beyond the typical parent-subsidiary relationship.  <u>Id.</u>  Similarly here, the evidence cited by Plaintiff does not show a level of day-to-day control by Defendant that would support an actual agency relationship between Defendant and YWAM-Bishop.  Summary judgment on Count IV will therefore be granted in favor of Defendant.

### D.    Count V: Ostensible Agency

Under California law, an agency is ostensible when a principal causes a third person to believe another to be his agent, who is not really employed by him.  Cal. Civ. Code § 2300.

Ostensible agency is rooted in the doctrine of estoppel, which requires a showing of "representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury." Kaplan v. Coldwell Banker Residential Affiliates, Inc., 59 Cal. App. 4th 741, 747 (Cal. App. 1997) (quoting Preis v. American Indemnity Co., 220 Cal. App. 3d 752, 761 (Cal. App. 1990). The California Supreme Court has stated:

> Before recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: the person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief.

J.L. v. Children's Institute, Inc., 177 Cal. App. 4th 388 (Cal. App. 2009); see also Mejia v. Community Hospital of San Bernardino, 99 Cal.App.4th 1448, 1456-1457, 122 Cal.Rptr.2d 233, 239 (Cal. App. 2002); Deutsch v. Masonic Homes of California, Inc., 164 Cal. App. 4th 748, 80 Cal. Rptr. 3d 368 (Cal. App. 2008). Courts have found "there is rarely any basis on which the principal may be held liable in tort for the acts of an ostensible agent. The essential element of reliance on the misrepresentations or conduct of the principal is usually lacking." Children's Institute, 177 Cal. App. 4th at 405 (quoting 3 WITKIN, SUMMARY OF CAL. LAW (10th ed. 2005)).

Plaintiff contends that he reasonably relied on representations made by University concerning its relationship with YWAM-Bishop in reaching his decision to apply to the SOAR course. Much of the evidence Plaintiff cites comes from the University of the Nations course catalog.[6] The course catalog contained statements that the University of the Nations is an integral part of the YWAM movement, and that YWAM is the parent organization of University of the Nations. The SOAR course in which Plaintiff enrolled is listed under the Bishop, California campus in the course catalog. Plaintiff has testified that these statements caused him to conclude that YWAM-Bishop is a branch campus of the University of the Nations, which is the same entity

[6] The Court notes that Defendant maintains the course catalog is published by University of the Nations-International, which is not the same entity as University of the Nations, Inc. For summary judgment purposes, however, the Court views the facts in the light most favorable to Plaintiff and will assume that the two entities are the same.

1  as YWAM International, Inc.  The Court finds that a reasonable jury could conclude from this

2  evidence that University's representations caused Plaintiff to reasonably believe that YWAM-

3  Bishop was the agent of University.

4          While Plaintiff's reasonable belief is a necessary factor, it is not sufficient to establish

5  ostensible agency.  The second prong of the ostensible agency test requires a showing that reliance

6  on this belief caused a change in position and resulting injury.  Plaintiff cites Kaplan v. Coldwell

7  Banker Residential Affiliates, Inc., 59 Cal. App. 4th 741, a fraud case in which the plaintiff

8  testified that he relied on advertising using the reputable name "Coldwell Banker," the logo, and

9  the word "member" to believe that a franchisee was the ostensible agent of Coldwell Banker.

10  Plaintiff relied on these representations in deciding to engage the franchisee to purchase real

11  property that Plaintiff later discovered was not as represented, and the Court of Appeal found a

12  triable issue as to ostensible agency.  See Kaplan, 59 Cal. App. 4th at 744.  Plaintiff contends that

13  just as Kaplan relied on the Coldwell Banker name, Plaintiff relied on the representations in the

14  University of the Nations course catalog concerning its relationship with YWAM International,

15  Inc. and YWAM-Bishop in deciding to enroll in the SOAR course which led to his injury.

16          Plaintiff's testimony, however, reveals that he enrolled in the SOAR course not in reliance

17  on his belief that YWAM-Bishop was the agent of University, but rather in reliance on his belief

18  that YWAM-Bishop was an entity that was part of and subscribed to the values of the YWAM

19  movement.  From his prior experience in the movement, he knew University of the Nations was

20  affiliated with YWAM, and he looked to the University of the Nations course catalog to find a

21  YWAM outdoor program.  In J.L. v. Children's Institute, Inc., the California Court of Appeal

22  considered a similar case in which a nonprofit corporation provided childcare services through its

23  own licensed day care centers, and also maintained a list of licensed family day care homes that

24  provided childcare services.  177 Cal. App. 4th at 392.  The plaintiff, whose child had been

25  sexually assaulted at a family day care home referred by the nonprofit, argued that the family day

26  care home was the ostensible agent of the nonprofit.  Id. at 403.  The Court of Appeal rejected this

27

28                                                  25

1   argument, and distinguished <u>Kaplan</u>, finding that the evidence showed that the family day care

2   home operated independently of the nonprofit, and there was no evidence that it had held itself out

3   as part of the nonprofit, or that the plaintiff believed she was dealing with the nonprofit when she

4   selected the family home day care center.  <u>Id.</u> at 406.  "Evidence that [the nonprofit] and [the

5   family day care home operator] maintained some relationship was insufficient to create a triable

6   issue as to ostensible agency."  <u>Id.</u>  Here, Plaintiff did not enroll in the SOAR course to earn

7   credits toward a University of the Nations degree.  The evidence shows that YWAM-Bishop

8   operated independently of University.  All SOAR course forms signed by Plaintiff indicated that

9   he was contracting with YWAM-Bishop, doing business as Sea and Summit Expeditions.  In his

10  correspondence with YWAM-Bishop prior to the course, YWAM-Bishop did not hold itself out

11  as an agent of University.[7]  Thus, the court finds that there is no evidence from which a reasonable

12  jury could find that Plaintiff relied on the representations by University in deciding to enroll in the

13  SOAR course.  Summary judgment on Count V will be granted in favor of Defendant.

14

15          **E.     Count VIII: Alter Ego**

16          The alter ego doctrine provides that "[a] corporate identity may be disregarded - the

17  'corporate veil' pierced - where an abuse of the corporate privilege justifies holding the equitable

18  ownership of a corporation liable for the actions of the corporation."  <u>Sonora Diamond</u>, 83 Cal.

19  App. 4th at 538.  Under California law, there are two elements required to invoke the alter ego

20  doctrine.  "First, there must be such a unity of interest and ownership between the corporation and

21  its equitable owner that the separate personalities of the shareholder do not in reality exist.

22  Second, there must be an inequitable result if the acts in question are treated as those of the

23

24          _____

25          [7] As discussed above, after Plaintiff enrolled in the SOAR course, he emailed Sea and
    Summit Expeditions to ask how the SOAR course is part of the University of the Nations
26  because he was interested in obtaining financial assistance from his government.  In response,
    Plaintiff received an email from a Sea and Summit Expeditions staff member using the word
27  "we" to refer to "U of N."  However, Plaintiff could not have relied on this email in deciding
    whether to enroll in the SOAR course - he was already enrolled.

28                                            26

corporation alone." Id. (citing Automotriz Del Golfo De California v. Resnick, 306 P.2d 1, 63 (Cal. 1957); Hennessey's Tavern, Inc. v. American Air Filter Co., 204 Cal. App. 3d 1351, 1358 (Cal. App. 1988)).

> There are several factors to be considered in the alter ego analysis: commingling of funds and other assets of the two entities, the holding out by one entity that is liable for the debts of another, identical equitable ownership in the two entities, use of the same offices, employees, and use of one as a mere shell or conduit for the affairs of the other. . . inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

Id. No single factor is determinative, and courts must look at the totality of the circumstances to determine whether to apply the alter ego doctrine.

Plaintiff has indicated that he intends to dismiss his alter ego claim against University and therefore raised no arguments as to alter ego in his Opposition to University's motion. See Court's Docket, Doc. No. 105 at 3. The Court has reviewed the record and did not find any evidence tending to refute University's argument that University and YWAM-Bishop have not commingled funds, shared revenue, shared assets, shared or had in common directors, officers, staff members, offices, real or personal property, or professional service providers. For these reasons, the Court will grant summary judgment in favor of University with respect to Count VIII.

## V.      CONCLUSION AND ORDER

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion to strike the Declaration of Thomas Bloomer is DENIED;

2.      Defendant's motion for summary judgment is GRANTED; and

3.      The Clerk shall enter judgment in favor of Defendant University of the Nations, Inc.

IT IS SO ORDERED.

Dated:   February 14, 2012 _____

_____
CHIEF UNITED STATES DISTRICT JUDGE